UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff.<br><br>v.<br><br>JERMAINE THOMAS,<br><br>Defendant. | Docket No. 05-CR-10092 |

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO THE GOVERNMENT'S
SENTENCING RECOMMENDATION**

Defendant Jermaine Thomas ("Mr. Thomas") submits this Memorandum in Opposition to the Government's Sentencing Recommendation to assist the Court in determining a fair and equitable sentence in this case. As set forth in more detail below, Mr. Thomas, who, until last year, spent his entire adult life behind bars, has done a remarkable job adjusting to life out of prison and working toward becoming a productive member of society. No societal, punitive or rehabilitative goal would be served by sending him back to prison for many months, as the government recommends. Rather, Mr. Thomas should be placed in a setting where he will receive the treatment and counseling he needs, coupled with a continued ability to work (as he has done since his release), and provide for the child he is expecting in a few months.

I. BACKGROUND

Mr. Thomas was arrested for violating the conditions of his supervised release and appeared before the Honorable Judith G. Dein, U.S. Magistrate Judge, on August 15,

1

3977749v1

2005. Prior to his arrest, Mr. Thomas had been on supervised release for over one year, following a ten year prison term for Conspiracy to Possess with Intent to Distribute a Substance Containing Cocaine Base in violation of 21 U.S.C. §841(a)(1). The government alleges that Mr. Thomas violated the conditions of his supervised release by being arrested and charged with Operating an Uninsured Motor Vehicle and Unlicensed Operation of a Motor Vehicle on February 11, 2005 (an offense that Mr. Thomas reported to Mr. Smith and which will be dismissed upon the payment of court costs)[1] and failing to report for a urine screen on March 21, 2005, after admitting that he had used marijuana on March 18, 2005. The government recommends that Mr. Thomas serve a five-month term of imprisonment as punishment for these violations.

Mr. Thomas does not dispute the government's allegations that he has violated the conditions of his supervised release; however, as set forth in more detail below, he contends that the government's recommendation for sentencing is excessive and overly harsh under the circumstances.

II.   MR. THOMAS'S CONDUCT ON SUPERVISED RELEASE

Mr. Thomas was arrested for the underlying drug offense when he was eighteen years old. He pleaded guilty and served ten years in prison, before being released in August of 2004, at age twenty-eight. Despite spending most of his young adulthood in prison, Mr. Thomas made a concerted effort to move forward with his life following his release. He initially complied with all the conditions of his five-year term of supervised release, including having weekly meetings with his probation officer, Jeffrey Smith ("Mr. Smith"), completing a mental health evaluation, abstaining from using drugs and securing employment.

---

[1] Mr. Thomas is willing and eager to meet that obligation once he earns enough money from his job.

2

3977749v1

One of Mr. Thomas' employers, Raul Casanova, has submitted an affidavit (attached hereto as Exhibit 1) attesting to Mr. Thomas' performance on the job. Mr. Casanova states that Jermaine Thomas was employed by Next Step Logistics, LLC in Brockton, "was a great worker, was always on time for work" and that he was "dependable, hard working and a quick learner." (*Id.* at ¶ 3.) Further, Mr. Casanova, the Operations Manager at Next Step Logistics avers that "Next Step will re-hire Jermaine again without reservation." (*Id.* at ¶ 4.)

Mr. Thomas ultimately left Next Step in order to seek better employment opportunities. (*See* Affidavit of Warren Williams, attached hereto as Exhibit 2, at ¶ 6.) Warren Williams, employed at the Grove Hall Community Center, attests that he helped Mr. Thomas apply for the work/education program jointly sponsored by N-Star and Bunker Hill Community College. (*Id.* at ¶ 6) Mr. Williams further reports that Mr. Thomas has been admitted into this program and is scheduled to matriculate in January 2006. (*Id.*)[2] (Notably, when Mr. Thomas was arrested for violation of his supervised release, he was on his way to work at a construction job that he had recently taken to attempt to earn additional income to support himself and his family.)

In addition to Mr. Thomas' laudable efforts to rehabilitate himself through productive work (not an easy task for an individual without much family support who has spent his entire adult life in prison), he has also, since his release from prison, spent countless hours mentoring Dorchester's youth about the dangers of violence and drugs. Mr. Williams, who has seen Mr. Thomas's efforts firsthand, reports the following:

> Jermaine grew up in a city identified as one of the "hot spots" with the highest number of crimes, drugs, firearm arrests, violence, etc. I met Jermaine at Grove

---

[2] This program includes: (i) two years of academic, technical and onsite training; (ii) up to ten weeks of paid cooperative work experience; and (iii) an overhead line worker job offered to graduates.

> Hall [Community Center] in or around August 2004, after he was released from prison. Over the past several months, I have come to know Jermaine and he is a hardworking and decent young man who truly acknowledges and regrets his mistakes, and is making great strides towards changing his life.
>
> Jermaine has been an asset to Grove Hall and the community's youths as he spends countless hours mentoring young people about the dangers of violence and drugs speaking from his own experiences, and hoping to have a major impact in making a difference in their lives. This is part of Jermaine's road to recovery and he truly wants to make a difference in the youths and in his own life. Jermaine is not being paid by Grove Hall to mentor these youths, he has taken it upon himself to spend numerous hours with them because he truly cares.
>
> . . .
>
> I understand Jermaine may be facing possible jail time as a result of violating his parole. I believe sending Jermaine back to prison would be a great mistake as incarceration will hinder the substantial progress he has made thus far, and the progress he can make going forward especially with the educational program he has applied for and accepted to attend.
>
> I believe Jermaine has been an upstanding citizen since his release from prison, and has avoided the negative temptations of the streets. I feel Jermaine is deserving of a second chance based upon his excellent progress and work in the community thus far, and plead the Court to be lenient with any proposed sentence.

(*Id.* at ¶¶ 3-4, 7.)

To be sure, Mr. Thomas has faced some difficult situations while on supervised release. He initially moved in with his closest friend, a man Mr. Thomas describes as being like a brother to him. Unfortunately, this friend began using drugs and their friendship dissolved. Mr. Thomas asked Mr. Smith if he could move to a different apartment in order to distance himself from this friend and his illegal activity. Mr. Smith approved Mr. Thomas's request to move and Mr. Thomas attempted to move in with a female friend. Much to Mr. Thomas's disappointment, this friend changed her mind about the living arrangement and Mr. Thomas was forced to relocate a third time.

Despite the upheaval in Mr. Thomas's living situation over the year and the stress of losing his closest friendship, as described above, Mr. Thomas continued to maintain employment, volunteer for community service and has taken on the responsibilities of caring for a family, as in the past few months, Mr. Thomas has assumed the responsibility of caring for his pregnant girlfriend, Carmen Baez.[3]

Mr. Thomas has tried very hard to turn his life around in the past year. Unfortunately, Mr. Thomas did succumb to the stress of losing his closest friendship in March and used marijuana. He acknowledges that he has been afraid to report for his urine screens since then. However, Mr. Thomas wants to get back on the right track and asks the Court to consider the efforts he has made through work and community service to become a valuable member of society.

### III. SENTENCING RECOMMENDATION

#### A. Legal Analysis

As the Court is aware, the portions of the Sentencing Guidelines dealing with revocation of supervised release are advisory, not mandatory. See U.S.S.G. §§ 7B1.1-7B1.5; United States v. O'Neil, 11 F.3d 292, 301 n.11 (1st Cir. 1993). The First Circuit recently called the guidelines provisions dealing with revocation of supervised release "merely policy statements," holding that, "Even before United States v. Booker, 543 U.S. ___, 160 L. Ed. 2d 621, 125 S. Ct. 738 (2005) those guidelines were deemed advisory rather than mandatory. They remain advisory to this date." United States v. Work, 409 F.3d 484, 492 (1st Cir. 2005).

---

[3] We anticipate that Mr. Thomas's girlfriend, Carmen Baez, will appear in Court today on Mr. Thomas's behalf and can attest to Mr. Thomas' work ethic and his efforts to get his life on track.

B. <u>Mr. Thomas's Recommendation</u>

Mr. Thomas asks that the Court exercise its discretion and reject the government's recommendation that he return to prison. Such a sentence would deprive Mr. Thomas of the ability to work to support himself and his family, impair all the progress he has made to date, make him unable to satisfy his $600 obligation to the Dedham District Court and be harmful to his pregnant girlfriend, Carmen Baez, who is counting on Mr. Thomas's support, care and assistance.

Mr. Thomas proposes the following alternative resolution to the Court. Mr. Thomas recommends that he be permitted to continue his supervised release. He is willing to enroll in a drug rehabilitation program. Additionally, Mr. Thomas is willing to serve three months in a halfway house or be monitored by wearing a bracelet. To that end, Mr. Thomas's attorneys have researched halfway houses in Massachusetts and have learned that the Lawrence Correctional Alternative Center in Essex County has availability and offers a substance abuse treatment program which is available to federal defendants on supervised release.[4]

IV. <u>CONCLUSION</u>

Mr. Thomas asks the Court to help him move forward in his goal of becoming a responsible citizen and valuable member of society—a goal which would not be advanced by serving additional time in prison. Mr. Thomas has been in custody since August 15, 2005. He asks the Court to recognize the time he has already served as adequate prison time for his violation of supervised release and respectfully recommends

---

[4] Mr. Thomas is also willing to going to Coolidge House if beds are available. Mr. Thomas previously spent time at Coolidge house after his release from prison in August 2004.

that the Court consider the alternatives listed above as an appropriate sentence for his conduct.

        Respectfully submitted,

        JERMAINE THOMAS,
        by his attorneys,

        <u>Diana K. Lloyd /s/</u>
        Diana K. Lloyd (BBO# 560586)
        Christopher Edwards (BBO# 640758)
        CHOATE, HALL & STEWART
        Two International Place
        Boston, Massachusetts 02110
        Telephone: (617) 248-5000

Dated: September 8, 2005

3977749v1

## CERTIFICATE OF SERVICE

I, Diana K. Lloyd, attorney for the Defendant, Jermaine Thomas, hereby certify that I served a copy of the above document by facsimile and e-mail, upon AUSA David Tobin on September 8, 2005.

Diana K. Lloyd /s/
Diana K. Lloyd (BBO #560586)

3977749v1

# EXHIBIT 1

## AFFIDAVIT OF RAUL CASANOVA

I, Raul Casanova, submit this affidavit in support of Jermaine Thomas' ("Jermaine") Opposition to the Government's sentencing recommendation and state under the pains and penalties of perjury that:

1. I am currently employed as the Operations Manager at Next Step Logistics, LLC ("Next Step") located at 28 Emmett, Brockton.

2. Jermaine Thomas was employed by Next Step for approximately six months.

3. Jermaine was a great worker, was always on time for work, dependable, hard working and a quick learner.

4. Next Step will re-hire Jermaine again without reservation.

We hope the court will take this factor into consideration at his parole revocation hearing scheduled for September 8, 2005.

Signed under the pains and penalties of perjury.

_____
Raul Casanova

Date: September 7, 2005

3979207v1

# EXHIBIT 2

## AFFIDAVIT OF WARREN WILLIAMS

I, Warren Williams, submit this affidavit in support of Jermaine Thomas' ("Jermaine") Opposition to the Government's sentencing recommendation and I state under the pains and penalties of perjury that:

1. I am currently employed at the Grove Hall Community Center ("Grove Hall") located at 48 Geneva Avenue, Dorchester, MA 02119. I have worked at Grove Hall for eight years in the capacity as a Streetworker and Supervisor.

2. Grove Hall was formed to bring additional resources and jobs to city youth in its effort to reduce drugs and violence on the streets by providing additional resources for at-risk youth. We strive to provide a safe and supportive environment where the community's youth can come to engage in constructive activities. Grove Hall has a full-size basketball court, computer rooms, offices, and a multi-purpose room.

3. Jermaine grew up in a city identified as one of the "hot spots" with the highest number of crimes, drugs, firearm arrests, violence, etc. I met Jermaine at Grove Hall in or around August 2004, after he was released from prison. Over the past several months, I have come to know Jermaine and he is a hardworking and decent young man who truly acknowledges and regrets his mistakes, and is making great strides towards changing his life.

4. Jermaine has been an asset to Grove Hall and the community's youth as he spends countless hours mentoring young people about the dangers of violence and drugs speaking from his own experiences, and hoping to have a major impact in making a difference in their lives. This is part of Jermaine's road to recovery and he truly wants to make a difference to the youth and in his own life. Jermaine is not being paid by Grove Hall to mentor the youth, he has taken it upon himself to spend numerous hours with them because he truly cares.

1

3978554v1

5.  Jermaine has actively maintained employment since his release. He initially worked at Next Step Moving Company located in Boston, MA and eventually left the Company seeking better employment opportunities.

6.  Jermaine has expressed extreme interest in broadening his education in order to obtain better job opportunities. On March, 2005 I helped Jermaine apply for the work/education program jointly sponsored by N-Star/the Utility Worker's Union and Bunker Hill Community College. <u>Jermaine has gained successful admittance into this program, and is scheduled to matriculate in January 2006</u>. The Program includes: (i) two years of academic, technical and onsite training; (ii) up to ten weeks of paid cooperative work experience; and (iii) an overhead line worker job offered to graduates. Jermaine is eager to attend this program and make something of himself.

7.  I understand Jermaine may be facing possible jail time as a result of violating his parole. I believe sending Jermaine back to prison would be a great mistake as incarceration will hinder the substantial progress he has made thus far, and the progress he can make going forward especially with the educational program he has applied for and accepted to attend.

I believe Jermaine has been an upstanding citizen since his release from prison, and has avoided the negative temptations of the streets. I feel Jermaine is deserving of a second chance based upon his excellent progress and work in the community thus far, and plead the Court to be lenient with any proposed sentence.

2

Signed under the pains and penalties of perjury.

_____
Warren Williams

Date: September 8, 2005

3978554v1